967 F.2d 596
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Betty URVINA, Plaintiff-Appellant,
v.
Louis W. SULLIVAN, M.D., Secretary of Health and Human
Services, Defendant-Appellee.
 No. 91-35269.
 United States Court of Appeals, Ninth Circuit.
 Submitted June 4, 1992.*
Decided June 19, 1992.
 
 Before EUGENE A. WRIGHT, CANBY and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Plaintiff-Appellant Betty Urvina appeals the district court's grant of summary judgment in favor of the Secretary on her claim for social security disability insurance benefits. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We reverse.
 
 Urvina's Medical Background
 
 3
 Urvina was diagnosed with Parkinson's disease in 1985. She also suffers from rheumatic heart disease, hypertension and diabetes mellitus. Her rheumatic heart disease has damaged her left mitral valve with the result that she suffers from mitral valve regurgitation. Urvina's ventricular ejection fraction is 71%. This fraction is sufficient so as not to require surgery to replace the mitral valve. However, as a result of this condition, Urvina suffers from extreme shortness of breath and becomes easily tired.
 
 
 4
 Urvina also has Parkinson's disease, a neurological disorder. The disease has affected significantly her memory, her ability to concentrate, her vision, and her control over her extremities. She suffers from "restless leg" syndrome, experiences severe numbness in her hands and feet and has trouble manipulating her hands. She can no longer pursue her hobby of beadwork and cannot type. These are the symptoms which she exhibits while under medication. These symptoms would be much more severe without the medication and her treating physician indicated that her medications only keep her symptoms in "precarious control."
 
 
 5
 Both Urvina's rheumatic heart disease and Parkinson's disease are permanent, degenerative conditions.
 
 The Administrative Hearing
 
 6
 The above described medical evidence was presented at the hearing in February of 1988. Urvina also testified at the hearing. In addition to being questioned about her medical condition, Urvina was also questioned about her daily activities. It is on this testimony that the ALJ based his rejection of the medical evidence provided by Urvina's treating physicians. Urvina testified that she played pool fairly regularly. But, she also testified that she had trouble gripping the pool cue and that she no longer had the strength to "break" the balls at the beginning of a game. She told the ALJ that she would sometimes babysit for her grandchildren because she was living in the same household with them. Finally, the ALJ asked her whether she did any dancing. She said yes, but told the ALJ that she had not danced in over a year. She also admitted that she would dance by herself sometimes while in the kitchen. This was the extent of the testimony regarding Urvina's daily activities. The ALJ did not further develop the testimony about dancing or babysitting in order to determine whether it was really inconsistent with her claimed medical impairments.
 
 
 7
 I. THE ALJ ERRED IN REJECTING THE UNCONTROVERTED MEDICAL TESTIMONY OF URVINA'S TREATING PHYSICIANS
 
 
 8
 It is well established that the ALJ must accord substantial weight to the opinion of a claimant's treating physician. Megallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.1989); Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir.1988); Murray v. Heckler, 722 F.2d 499, 502-03 (9th Cir.1983). It is equally well established that although the ALJ is not bound by the treating physician's opinion, in the absence of conflicting medical testimony, he may disregard that opinion only in the face of clear and convincing evidence and he must state the evidence being relied upon on the record. Megallanes v. Bowen, 881 F.2d 747 (9th Cir.1989).
 
 
 9
 The Secretary contends that there was clear and convincing evidence to support the ALJ's rejection of the opinions of Drs. Funk and Olsen that Urvina was disabled. The Secretary points to the testimony of Urvina to support this contention. The Secretary claims that the evidence about Urvina's dancing, babysitting and pool playing is clear and convincing evidence that she was not disabled. The Secretary places too much weight on the minimal testimony elicited at the hearing.
 
 
 10
 Urvina testified that she did some dancing approximately a year prior to filing her application. She indicated that the dancing lasted no more than thirty minutes at a time. She also stated she occasionally would dance with herself in the kitchen. This was the extent of the testimony with respect to Urvina's dancing. No attempt was made to define what Urvina meant by dancing. No attempt was made to determine how strenuous the "dancing" was. No attempt was made to determine how long Urvina would dance with herself in the kitchen and no attempt was made to determine the physical effect of the dancing on Urvina. The ALJ simply concluded that the "dancing" was strenuous and lasted for long periods of time, and was therefore inconsistent with Urvina's claim to be disabled.
 
 
 11
 The ALJ also viewed Urvina's pool playing as inconsistent with her claim of disability. If anything, Urvina's testimony on this subject corroborated rather than contradicted the opinions of her treating physicians. Urvina testified that she did play pool fairly regularly. However, she also testified that, as a result of the Parkinson's, she has trouble gripping the pool cue effectively and that she lacks the strength to "break" the balls at the beginning of the game. Furthermore, the ALJ did not attempt to determine how long Urvina would play nor what physical effect this activity had on her. The ALJ simply speculated that she would play for long periods of time and that the activity had no physical effect on her and was therefore inconsistent with her disability claim.
 
 
 12
 Likewise, the ALJ relied on Urvina's testimony that she would occasionally babysit her grandchildren to conclude that she was not disabled. However, the only other testimony elicited on this subject was that it was really the grandchildren who looked after Urvina. "ALJ's Q: You take care of your daughter's children? A: Yes. Now they take care of me. The little ones." Again, no effort was made to develop this testimony. No attempt was made to determine who was babysitting whom. Assuming Urvina was the babysitter, no attempt was made to discover what sort of things she had to do when babysitting. For instance, did she have to lift the children or run after them or did she simply sit and watch them play? No attempt was made to determine how long Urvina would babysit and no attempt was made to determine what physical effect, if any, this activity had on Urvina. Did she get tired out after only a few hours or did the activity have no effect at all? Without looking into these questions in more detail, there is no way to know whether these activities are inconsistent with the opinions of Urvina's physicians. Mere speculation by the ALJ does not rise to the level of clear and convincing evidence.
 
 
 13
 The Secretary also claims that the doctors' own treatment notes do not support their opinions. This claim is baseless. A close examination of the doctors notes reveals that all of the symptoms cited by the doctors in their opinions were noted in the treatment records. Finally, the Secretary claims that the psychiatric report does not support the treating physicians diagnosis with respect to Urvina's deteriorating mentation. This claim is also without support. Dr. Olsen indicated that he believed that Urvina's decreasing mental status was attributable to the "underlying problems with Parkinson's or ... a separate affective disorder." At that time the doctors did not know which condition was responsible. Thus, Urvina was referred for a psychiatric consultation. That consultation revealed that Urvina did not have a separate affective disorder. That finding in no way conflicted with Dr. Olsen's diagnosis.
 
 
 14
 The medical testimony in this case was uncontradicted. It is entitled to substantial weight. The ALJ wrongfully discounted that evidence. Urvina's testimony about her activities was not clear and convincing evidence that the medical testimony was wrong. Therefore, we reverse the Secretary.
 
 
 15
 II. THE ALJ DID NOT ERR IN APPLYING 20 C.F.R. § 404.1572(c)
 
 
 16
 Urvina's claim that the ALJ erred in failing to apply 20 C.F.R. § 404.1572(c) is without merit. Section 404.1572(c) defines "substantial gainful activity" in the context of work activity performed by the applicant. This section is used to determine whether work performed by the applicant is sufficient to be considered substantial gainful activity thereby refuting a claim that the applicant is currently not working. That is not the issue in this case.
 
 
 17
 The ALJ did not use the evidence to find that Urvina was gainfully employed. The ALJ used the testimony about Urvina's daily activities to impeach the medical opinion that Urvina was disabled. This was a proper use of such evidence. Fair v. Bowen, 885 F.2d 597 (9th Cir.1989) (daily activities can properly be considered by the ALJ in determining whether an applicant can perform a particular type of labor). Thus, on this issue, we affirm the Secretary.
 
 
 18
 For these reasons, the judgment of the district court is hereby REVERSED.
 
 
 
 *
 The panel finds this case appropriate for submission without argument pursuant to Fed.R.App.P. 34(a) and 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3