**Elwood IVERSON, Plaintiff–Appellant,**

**v.**

**Jo Anne BARNHART, Commissioner, Social Security Administration\*, Defendant–Appellee.**

No. 00–55165.

D.C. No. CV–98–6424 ABC (AN).

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 6, 2001.

Decided Jan. 2, 2002.

---

\* Jo Anne Barnhart, is substituted for her predecessor, Kenneth S. Apfel, as Commissioner of the Social Security Administration.

Before WALLACE, CYNTHIA HOLCOMB HALL, and TROTT, Circuit Judges.

MEMORANDUM **

Iverson appeals from the district court's judgment affirming the final decision of the Commissioner of Social Security, which denied Iverson's applications for disability benefits under Title II of the Social Security Act. Iverson argues that his impairment prior to October 1, 1987 was severe and equaled a listed impairment and that the decision of the Administrative Law Judge (ALJ) was not based on substantial evidence in the record. The district court had jurisdiction pursuant to 42 U.S.C. § 405(g), and we have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291. We affirm.

We review de novo the district court's judgment affirming the Commissioner's denial of benefits. *See Lewis v. Apfel*, 236 F.3d 503, 509 (9th Cir.2001). We will uphold the Commissioner's decision if it is supported by substantial evidence and if the Commissioner applied the correct legal standards. *Id.*

Iverson first argues that his impairment equaled Listing 1.05C of 20 C.F.R. Part 404, Subpt. P, App. 1 (1999) prior to October 1, 1987, rendering him presumptively disabled. Medical equivalence is described in 20 C.F.R. § 404.1526. An impairment "is medically equivalent to a listed impairment . . . if the medical findings are at least equal in severity and duration to the listed findings." 20 C.F.R. § 404.1526(a) (2001). It is the province of

** This disposition is not appropriate for publication and may not be cited to except as may

the ALJ, and not testifying physicians, to determine medical equivalence. The ALJ makes the ultimate equivalence determination. *See* Soc. Sec. Ruling 96–5P (July 2, 1996). In so doing, the ALJ is not bound by the expressed judgment of the medical experts, though he must give such evidence appropriate weight. *See id.; see also* Soc. Sec. Ruling 96–2p (July 2, 1996). Because Iverson's impairment is not listed, the ALJ appropriately considered Listing 1.05C, the listed impairment most like Iverson's impairment, to decide whether Iverson's impairment is medically equivalent. *See* 20 C.F.R. § 404.1526(a) In this case, the ALJ must compare the symptoms, signs, and laboratory findings relevant to Iverson's impairment, as shown in the medical evidence, with the medical criteria described for Listing 1.05C. *See id.* §§ 404.1526(a) and 404.1526(b). Listing 1.05C describes

[o]ther vertebrogenic disorders (e.g., herniated nucleus puplosus, spinal stenosis) with the following persisting for at least 3 months despite prescribed therapy and expected to last 12 months. With both 1 and 2:

1. Pain, muscle spasm, and significant limitation of motion in the spine; and

2. Appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss.

20 C.F.R. Part 404, Subpt. P, App. 1, Listing 1.05C (1999). A determination of medical equivalence must be supported by medical findings, and the medical findings must be based on "medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 404.1526(b).

be provided by Ninth Circuit Rule 36.3

■ The ALJ determined that, prior to October 1987, there was insufficient evidence to support a finding that Iverson's impairment was medically equivalent to Listing 1.05C, and his determination was based on substantial evidence. During the relevant period, Iverson was treated for the impairment by Dr. Faeth, but the treatment consisted primarily of Dr. Faeth filling out forms to enable Iverson to collect disability benefits. The ALJ properly disregarded Dr. Faeth's opinion by providing clear and convincing reasons for so doing. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1995). Further, Dr. Krom, the designated medical expert, testified that there was no evidence in the April 8, 1982 myelographic report of the herniated nucleus puplosus shown in the October 23, 1987 myelogram. Dr. Krom also testified that Iverson's condition was not as severe in 1982 as in 1987, when it was determined that Iverson was disabled. Finally, Dr. Krom questioned the left foot drop symptoms in the face of Iverson's failure to use a foot brace and the lack of any meaningful treatment by Dr. Faeth. Thus, the ALJ's decision that there were not sufficient and reliable medical findings based on accepted clinical and laboratory techniques to support a finding of medical equivalence to Listing 1.05C was supported by substantial evidence.

Iverson unpersuasively contends that the ALJ's conclusion that he retained the ability to work and was therefore not disabled was not based on substantial evidence. As indicated earlier, the ALJ correctly rejected the opinion of Dr. Faeth, Iverson's treating physician. The ALJ cited the obvious discrepancy between Dr. Faeth's December 22, 1983 certification that Iverson was disabled and Iverson's own testimony that he regularly attended classes and obtained his real estate license in December of 1983. The ALJ also properly relied on the "absence of contemporaneous objective medically determinable evidence." The record shows that Dr. Faeth's progress notes were scant. *See Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989) (an ALJ is not required to accept a treating physician's opinion that is "brief and conclusory in form with little in the way of clinical findings to support [its] conclusion") (internal quotation marks omitted).

There is no medical evidence other than the Lutheran Brotherhood reports validating ongoing symptoms from the date of the last progress report, May 6, 1982, until October 5, 1987, when Iverson was examined by Dr. Morris. The ALJ properly concluded that the Lutheran Brotherhood reports themselves are not sufficient to support Iverson's disability claim because they were "cursory in nature" and "did not reflect the detailed comprehensive clinical and laboratory findings demanded by social security law, for the period in question."

The ALJ also properly relied on Iverson's testimony that Dr. Faeth did nothing other than "fill out the tickets for Lutheran Brotherhood." The ALJ highlighted the discrepancies between Dr. Faeth's diagnoses and treatment records. Although Dr. Faeth found Iverson totally disabled, his only instructions to Iverson were to avoid returning to work and engaging in strenuous physical activity; he advised "no change in diet or other habits." After 1982, there is no evidence that Dr. Faeth advised Iverson to wear a brace to mitigate the effects of foot drop.

■ The ALJ also properly discredited Iverson's subjective pain testimony. Iverson testified that, during the period from 1982 to 1987, his pain prevented him from working as a real estate agent. Iverson only needed to produce "objective medical evidence of an underlying impairment

which could reasonably be expected to produce the pain or other symptoms alleged." *See Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir.1996) (internal citations and quotation marks omitted). If Iverson produced such evidence and there was no evidence of malingering, the ALJ could properly reject the severity of symptoms testimony only if he made specific findings, stating clear and convincing reasons for doing so. *See id.* at 1283–84.

The ALJ properly discredited Iverson's testimony based on specific findings supported by clear and convincing reasons. The ALJ cited numerous inconsistencies in Iverson's history and testimony: Iverson reported different onset dates in his two disability applications, providing absolutely no support for the earlier date; Iverson characterized Dr. Faeth as unreliable and lying while continuing under his care; and Iverson told Dr. Morris that he did not work after 1981 when he in fact had worked as a real estate agent and delivered newspapers. In addition, there was no evidence that Iverson sought medical treatment from 1982 to 1987, and he was not taking medication or using a leg brace. Finally, Iverson's long association with Merrill Lynch Realty is evidence of daily activities inconsistent with Iverson's pain testimony.

Therefore, the ALJ correctly rejected the opinion of Dr. Faeth and discredited Iverson's subjective pain testimony.

AFFIRMED.