**Jessie BAILEY, Plaintiff—Appellant,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security Administration, Defendant—Appellee.**

No. 03–35359.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 6, 2004.

Decided May 20, 2004.

Kathryn Tassinari, Esq., Robert Baron, Esq., Cram, Harder, Wells & Baron, P.C., Eugene, OR, for Plaintiff–Appellant.

Jeffrey H. Baird, Esq., Office of the General Counsel, Seattle, WA, for Defendant–Appellee.

Before: REINHARDT, SILVERMAN, and CLIFTON, Circuit Judges.

MEMORANDUM *

Petitioner Jessie Bailey appeals the district court's affirmance of the Commissioner of Social Security's denial of her application for Supplemental Security Income payments. Because we conclude that the Administrative Law Judge (ALJ) applied the correct legal standards and because his decision to deny Bailey benefits is supported by substantial evidence, we affirm the judgment. As the parties are familiar with the facts, procedural history, and arguments, we cite them only as necessary.

Bailey asserts that the ALJ erred when he: 1) rejected the medical opinion of examining physician Dr. Truhn, 2) rejected the testimony of treating therapist Kristin Bezdek, 3) found Bailey's testimony to be not credible, and 4) posed a defective hypothetical to the vocational expert.

Dr. Truhn examined Bailey on a single occasion in May 2000. Almost a year later in April 2001, though he did not examine Bailey again, Dr. Truhn completed a Medical Source Statement concluding that Bailey was "markedly limited" in her ability to carry out simple one or two step tasks, and in her ability to maintain attention and concentration for extended periods. Although the ALJ agreed that Bailey suffered from "severe" mental impairments, he declined to adopt these portions of Dr. Truhn's diagnosis because it contradicted the reports of Bailey's treating source providers.

It is well-established that an ALJ may reject an examining physician's opinion in favor of a treating physician's whenever inconsistencies and contradictions are present. *See Lester v. Chater,* 81 F.3d 821, 830–31 (9th Cir.1995). In contrast to Dr. Truhn's single examination of Bailey, Dr. Dean *treated* Bailey for nearly a year and examined her on at least four separate occasions. Throughout his treatment of Bailey, Dr. Dean never reported the severe limitations in concentration and basic functioning that Dr. Truhn diagnosed. Not only does Dr. Truhn's diagnosis contradict that of Dr. Dean's but it also contradicts the reports of Dr. Ballew and Dr. Hennings, who reviewed Bailey's complete record in March and June of 2000, and determined that she was *not* markedly limited in her ability to focus, or in her ability to carry out short simple tasks.

The record thus reveals that Dr. Truhn's diagnosis is inconsistent with the reports of three other physicians—including that of a treating physician. Moreover, Dr. Truhn's diagnosis is neither entitled to the most weight under our case law, nor is it the most recent of the medical reports. Under these circumstances, we hold that the ALJ was entitled to reject Dr. Truhn's diagnosis in favor of the reports provided

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

by other physicians. *See Matney v. Sullivan,* 981 F.2d 1016, 1019 (9th Cir.1992) (holding that in evaluating the evidence, we must review the "record as a whole" and "if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ"); *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir.1989) (citations omitted) ("Where medical reports are inconclusive . . . resolution of conflicts in the testimony are functions solely of the [Commissioner].") (internal quotations omitted).

■ The ALJ also rejected Dr. Truhn's diagnosis because it was contradicted by Bailey's daily activities which included providing housekeeping and childcare services in exchange for room and board. The dissent points out that Bailey's duties cannot be described as "full-fledged child-care responsibilities." This court's decision in *Morgan v. Apfel,* 169 F.3d 595 (9th Cir. 1999), however, upheld a denial of benefits based on a claimant's comparable level of activity. In *Morgan,* we stated that an "ability to fix meals, do laundry, work in the yard, and *occasionally care for his friend's child* served as evidence of [claimant's] ability to work." *Id.* (emphasis added). Regardless of how we view the quality of the childcare Bailey rendered, the ALJ was entitled to find that her ability to feed and care for children contradicted Dr. Truhn's assessment that she was "markedly limited" in her ability to perform even one step tasks. For the foregoing reasons, we conclude that the ALJ's rejection of Dr. Truhn's diagnosis was not in error.

■ An ALJ can reject the opinion of a lay witness, such as therapist Kristin Bezdek, for reasons "germane" to the witness. *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir.2001). In so far as Bezdek opined that Bailey was incapable of working due to her anxiety and bipolar disorders, Bezdek's opinion was inconsistent with that of other medical professionals. Dr. Dean, Dr. Ballew, and Dr. Hennings never reported that Bailey was so impaired by her anxiety that she would be unable to work; in fact, Dr. Dean noted, without reservation, that Bailey was attempting to find employment.[1] Thus, the ALJ also did not err in rejecting Bezdek's opinion.

■ Our case law allows an ALJ to reject a claimant's testimony regarding the severity of her symptoms if the claimant has made prior inconsistent statements to medical sources concerning her symptoms. *See Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir.1996). The ALJ correctly noted that Bailey had previously given Dr. Truhn "inaccurate and misleading" information. For instance, when describing the severity of her manic episodes, Bailey told Dr. Truhn that her behavior was once so disrupted that she went 27 days without sleep or food. Moreover, the ALJ properly rejected Bailey's testimony because her claim that she could not perform even simple tasks was contradicted by the fact that, at the time of her testimony, Bailey was taking care of her daughter's children and of the house in exchange for room and board. *See id.; Morgan v. Apfel,* 169 F.3d 595, 600 (9th Cir.1999).

1. The dissent states that this report does not provide evidence that Bailey would have been able to sustain employment because she lasted less than a month at her "most recent job" due to a manic episode. Citing Bailey's experience at Albertson's Deli is unconvincing, however. First, the only evidence that Bailey actually suffered a manic episode is her own testimony, and for reasons discussed below, the ALJ was entitled to discredit Bailey's testimony. Second, this "recent job" occurred in either 1994 or 1995, five years prior to Dr. Dean's report and thus, is about as relevant to our current inquiry as Bailey's four-year tenure as a gas station employee in the late 80's and early 90's.

Because the ALJ was not obligated to accept either Dr. Truhn's opinion, or Bailey's testimony, his hypothetical to the vocational expert did set out all the relevant limitations and was thus, not in error. *See Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir.1989).

The district court properly affirmed the ALJ's denial of benefits.

AFFIRMED.

REINHARDT, Circuit Judge, dissenting.

REINHARDT, Circuit Judge.

Among the numerous physicians and other mental health professionals who have come into contact with Jesse Bailey, there is no disagreement that she has a severe bipolar disorder as well as other mental health illnesses. Even the Administrative Law Judge (ALJ) admits that Bailey will probably never work in the formal economy. Nonetheless, he found that Bailey was not disabled under the Social Security Act. For the following reasons, I disagree and would reverse.

In contrast to the majority, I believe that the ALJ failed to provide legitimate reasons supported by substantial evidence for rejecting the opinion of Dr. David Truhn, the clinical psychologist who examined Bailey in May 2000. The ALJ's primary reason for discrediting Dr. Truhn was that his findings contradicted those of Dr. Adrian Dean, the physician who had treated Bailey earlier. However, both doctors scored Bailey similarly on the Global Assessment of Functioning Scale, which indicates that they agreed that her psychological and occupational impairments were serious. Although Dr. Truhn's diagnosis reflected greater impairments than Dr. Dean identified, his evaluation was substantially more thorough than Dr. Dean's. In my view, it is not legitimate for an ALJ to reject the opinion of an examining doctor who administers a more comprehensive battery of psychological tests than did the treating doctor simply because the treating doctor who saw the patient only four times and failed to perform the extensive tests performed by the examining doctor did not learn as much about the patient's disability as did his more thorough and careful colleague.[1]

Nor did the ALJ's speculation that Dr. Truhn had been misled by Bailey's account of her personal history constitute a proper ground for rejecting his evaluation. Even though Dr. Truhn did not have access to Bailey's complete medical records, he did not accept her account at face value. Instead, he administered thorough, sophisticated tests, and on that basis, concluded, like Bailey's other doctors, that her skewed account revealed the extent to which her sense of reality was impaired by her mental illness.

The record also belies the ALJ's conclusion that Dr. Truhn underestimated Bailey's functional capabilities. The ALJ's finding that Bailey engaged in an "extensive, demanding range of activities" is not supported by substantial evidence. Unlike the claimant in *Morgan v. Apfel*, 169 F.3d 595, 600–03 (9th Cir.1999), Bailey never

---

1. Unlike the majority, I do not think that the reports of the two physicians who, at the government's request, reviewed Bailey's record support the ALJ's decision to discredit Dr. Truhn. Dr. Ballew's review occurred before Dr. Truhn's evaluation. Therefore, he was not able to analyze the battery of tests that Dr. Truhn conducted. Dr. Hennings's review did occur after Dr. Truhn's evaluation, but he gave no reason for any disagreement with Dr. Truhn and, in fact, did not even mention Dr. Truhn's evaluation in his report. Moreover, his opinion was conclusory, unsupported by clinical findings, and thus, deserves little weight. *See Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.1992).

assumed full-fledged child-care responsibilities. Not only was another adult always in the house to resolve any problems that might arise, but Bailey did little more than turn on the TV, ensure that her grandchildren were fed, and alert the other adult to any such problems. Also, Bailey performed a much narrower range of functions than Morgan whose duties extended as far as yard-work.

Dr. Truhn's assessment is further supported by the testimony of Kristin Bezdek, the therapist who began treating Bailey in June 2000. Although a therapist's opinion is not accorded as much weight as a physician's, *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir.2001), in this case the ALJ's discrediting of Bezdek's testimony followed logically, albeit erroneously, from his rejection of Dr. Truhn's evaluation. Contrary to the ALJ's finding, Bezdek's testimony was not inconsistent with her clinical entries in Bailey's records. Bezdek's notes, as well as the reports from Zola Yates, a nurse practitioner who also treated Bailey in 2000–2001, indicated that the claimant's condition waxed and waned—even when she was taking medication.

The ALJ's other primary reason for rejecting Bezdek's testimony was that her explanation for why Bailey failed to complete the Confidence Clinic at the Douglas County, Oregon Mental Health Center was contradicted by Charity McSpirit, the program's coordinator. Here, the ALJ clearly misinterpreted McSpirit's testimony. Bezdek and McSpirit agreed that Bailey's anxiety prevented her from completing the Confidence Clinic's skill-building curriculum in a classroom setting. That Bailey was suffering from "stressors" at the time adds nothing, as an individual with anxiety problems like Bailey's will almost inevitably suffer from stressors of one kind or another.

The ALJ's misinterpretation of McSpirit's testimony is also significant because the Confidence Clinic was designed as a precursor to vocational training and rehabilitation. Whatever limited tasks Bailey performed at home, her difficulties in the Confidence Clinic indicate that she was not able to transfer these capabilities to a formal work setting. *Cf. Morgan,* 169 F.3d at 600. Moreover, Bailey's failure in the Confidence Clinic occurred during a period when it is undisputed that she was taking medicine, contrary to the ALJ's finding that she was able to control her illnesses through proper medication.[2]

Having concluded that the ALJ failed to provide legitimate reasons supported by substantial evidence for rejecting Dr. Truhn's evaluation or germane reasons for according little weight to Bezdek's testimony, I would credit their opinions as true. *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir.1995). Because the vocational expert opined on cross-examination that a claimant with the diagnosis that Dr. Truhn reported would be unable to perform any substantial gainful work in the national economy, I would conclude that Bailey is disabled within the meaning of the Social Security Act and remand to the district court with instructions to remand to the Commissioner of Social Security for an award of benefits. *See Harman v. Apfel,* 211 F.3d 1172, 1178 (9th Cir.2000); *Schneider v. Commissioner of Social Security,* 223 F.3d 968, 976 (9th Cir.2000).

---

2. I also disagree with the majority that Dr. Dean's report "without reservation" that Bailey was looking for work provides any evidence that she would have been able to sustain employment. To the contrary, Bailey lasted less than a month in her most recent job, at an Albertson's deli, before she experienced a manic episode and was hospitalized.