**Diane S. BUBION, Plaintiff— Appellant,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant—Appellee.**

**No. 05–35608.**

United States Court of Appeals, Ninth Circuit.

Submitted Feb. 9, 2007.*

Filed March 7, 2007.

---

* This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

Eitan Kassel Yanich, Esq., Olympia, WA, for Plaintiff–Appellant.

David J. Burdett, Esq., Richard A. Morris, Esq., Social Security Administration, Office of the General Counsel, Brian C. Kipnis, Esq., Office Of The U.S. Attorney, Seattle, WA, for Defendant–Appellee.

Before: FISHER and TALLMAN, Circuit Judges, and EZRA,** District Judge.

## MEMORANDUM ***

Plaintiff–Appellant Diane S. Bubion appeals the district court's order adopting the magistrate's findings and recommendation to affirm the Commissioner's final decision that Bubion was not disabled as defined by the Social Security Act and hence not eligible for Social Security and Supplemental Security Income benefits. We affirm.

We review the district court's decision upholding the Commissioner's denial of Social Security benefits de novo. *Harman v. Apfel,* 211 F.3d 1172, 1174 (9th Cir.2000). The Commissioner's decision must be sup-

ported by substantial evidence and the Commissioner must have applied the correct legal standards. *Holohan v. Massanari,* 246 F.3d 1195, 1201 (9th Cir.2001). Because the parties are familiar with the facts and procedural history of the case, we do not recount them here. Bubion raises four issues on appeal, which we discuss in order.

1. *Treating and Examining Physicians' Opinions*

■ Bubion argues in exquisite detail that the ALJ ignored, did not give appropriate weight to, or rejected the opinions of her treating and examining physicians. To the contrary, the ALJ's 15–page single-spaced decision explicitly discussed—and incorporated into Bubion's residual functional capacity ("RFC") assessment—the opinions of almost all of the doctors. Because of the ALJ's thoroughness as well as the fact that very few of the doctors' opinions are in any tension with the RFC assessment, we consider here only what we view as Bubion's most serious complaints about the ALJ's treatment of the various doctors' opinions. *See Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir.2005) ("A decision of the ALJ will not be reversed for errors that are harmless.").

It was not improper for the ALJ to find that the July 14, 2000 form filled out by Dr. Khalid Ahmed, which stated that Bubion was unable to work, had little probative value. In addition, Dr. Ahmed's June 12, 2000 diagnosis of disc pathology was incorporated into the ALJ's finding of severe impairment and thus was not in conflict with Bubion's RFC assessment.

---

** The Honorable David Alan Ezra, United States District Judge for the District of Hawaii, sitting by designation.

*** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

Dr. Carpenter's surgery recommendation and observation that Bubion has a tingling pain that worsens with standing or sitting were also not inconsistent with the RFC assessment. More importantly, the RFC assessment took into account Bubion's tingling pain by requiring that she be able to alternate sitting and standing at least every hour.

Similarly, Dr. Miller's opinion that Bubion would have difficulty working because of her mental illness did not contravene the RFC assessment. Dr. Miller also stated that Bubion retains the ability to perform simple repetitive tasks without special supervision and that her symptoms were likely to improve with appropriate treatment. The ALJ explicitly incorporated Dr. Miller's comments into the RFC assessment.

Finally, the opinions of Dr. Mann, Dr. Tosomeen, Dr. Gabbita, Dr. Parveen Ahmed, and Dr. Doughly were all either explicitly accepted by the ALJ or not in any conflict with the RFC assessment. The ALJ specifically mentioned Dr. Mann's finding of lower back pain, Dr. Tosomeen's finding of a limited range of back motion, and Dr. Doughly's diagnosis of panic attacks. While the ALJ did not state that Dr. Gabbita and Dr. Ahmed treated Bubion for depression, neither of these doctors indicated any functional limitations and the ALJ did consider other doctors' diagnoses of depression.

### 2. The ALJ's Consideration of Bubion's Testimony

■ The ALJ provided several cogent reasons for finding Bubion's testimony, some of which was in tension with the RFC assessment, "generally credible, but not to the extent alleged": (1) she was able to care for her children, cook, clean, shop, drive, and attend church; (2) she did not go to physical therapy as recommended by her doctor; (3) she was not in acute distress upon examinations and at times had no complaints of pain; (4) there were large gaps of time for which there were no treatment records, no acute flare-ups of pain, and no emergency room visits; and (5) there were notations indicating pain of a lesser severity than now claimed by Bubion. Together these reasons constituted substantial evidence supporting the ALJ's decision not to accept Bubion's testimony in its entirety. *See Lester v. Chater,* 81 F.3d 821, 834 (9th Cir.1995) (ALJ must give specific reasons for discounting claimant's testimony); *Magallanes v. Bowen,* 881 F.2d 747, 755 (9th Cir.1989) (ALJ may disbelieve claim of pain that is more intense than medical evidence indicates).

■ Bubion's arguments about her testimony's credibility may be dismissed. While she did testify that she needs help or must take breaks in order to engage in daily activities, her own statement indicates that she has the capacity to perform such activities, despite her pain, by making necessary adjustments. Further, although the ALJ did not note that Bubion said she lacked transportation to physical therapy, lack of transportation is not one of the acceptable reasons listed in 20 C.F.R. § 404.1530(c) for not following a prescribed course of treatment, and her statement was not credible since she drove to other locations. The ALJ also did not err in citing the gaps in Bubion's treatment history because Bubion presented no proof that she lacked medical coverage from 1995 to 1997 and does not contest the ALJ's finding that there were gaps in later years as well. Similarly, the ALJ did not err in referring to an April 2001 notation that Bubion showed no anxiety or depression because the evidence to the contrary came from an earlier time period. Finally, contrary to Bubion's argument, the ALJ did take into account her testimony con-

cerning the adverse side effects of her anti-depressant medications, for example by noting in the RFC assessment that she "has moderate difficulties in maintaining concentration, persistence and pace" and recommending that she avoid machinery and heights.

### 3. *RFC Determination*

Bubion repeats her arguments that the ALJ failed to consider properly her doctors' opinions and thus contends that the RFC assessment is legally erroneous. As set forth above, either the ALJ did consider such evidence and incorporated it into the RFC assessment, or the evidence was not in tension with the assessment in the first place.

Bubion also contends that the RFC assessment does not account for several statements in her own testimony. However, the assessment does in fact reflect Bubion's testimony that she has to stand often (by requiring the alternation of sitting and standing at least every hour), that she cannot walk for long periods of time (by barring jobs that require standing or walking for more than an hour at a time or two hours a day), and that her medication affects her concentration (by requiring her to avoid machinery and heights). Although the assessment does not specifically address Bubion's difficulty with reaching and pulling, she does not argue that the jobs of semi-conductor bonder or table sorter require such abilities.

### 4. *Hypothetical Questions*

■ Bubion contends that two hypothetical questions posed to the vocational expert were improper because they did not include all of her limitations and misrepresented the RFC assessment. However, in her reply brief, Bubion admits that the ALJ's second hypothetical did include all of the limitations noted in the assessment.

The expert's answer to the question was thus substantial evidence that there exists a significant number of jobs in the national economy that Bubion can perform. *See Osenbrock v. Apfel,* 240 F.3d 1157, 1163–64 (9th Cir.2001).

■ Bubion also argues that the hypothetical questions posed failed to include her testimony about her limitations. But there is no requirement that hypothetical questions reflect the claimant's own testimony when that testimony has not been accepted fully by the ALJ. In any case, almost all of Bubion's testimony was incorporated into the hypothetical questions, though not in precisely the same language that she employed.

■ Finally, Bubion asserts that the ALJ did not consider the vocational expert's negative response to a hypothetical question posed by her attorney, i.e., whether it was possible to hold the job of a semiconductor bonder or table sorter if the individual was unable to complete an eight-hour workday more than two days a month because of pain. However, this hypothetical was not supported by the record and thus it was not error for the ALJ to decline to defer to the expert's negative response. *See Magallanes,* 881 F.2d at 756–57 ("The ALJ is not bound to accept as true the restrictions presented in a hypothetical question propounded by a claimant's counsel.").

**AFFIRMED.**