**George DONATHAN, Plaintiff–Appellant,**

v.

**Michael J. ASTRUE,\* Commissioner of Social Security Administration, Defendant–Appellee.**

No. 05–35986.

United States Court of Appeals, Ninth Circuit.

Submitted Dec. 3, 2007.\*\*

Filed Jan. 14, 2008.

\*\* The court granted Appellant's Motion to Submit Case on the Briefs pursuant to Fed. R.App. P. 34(a).

Graber, Circuit Judge, filed dissenting opinion.

Neil J. Evans, Esq., USPO—Office of the U.S. Attorney, Mark O. Hatfield, U.S. Courthouse, Portland, OR, Lucille G. Meis, Esq., Jeffrey H. Baird, Esq., SSA—Social Security Administration, Office of the General Counsel, Seattle, WA, for Defendant–Appellee.

Before: O'SCANNLAIN, GRABER, and CALLAHAN, Circuit Judges.

## MEMORANDUM ***

George Donathan appeals the district court's decision upholding the Social Security Administration Commissioner's denial of Donathan's application for disability insurance benefits. We affirm the district court. The parties are familiar with the factual and procedural history of this case, so we do not repeat it here.

This court reviews the district court's order affirming the administrative law judge's ("ALJ") denial of social security benefits *de novo*. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir.2007) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir.

2005)). The court will disturb the denial of benefits only if the decision "contains legal error or is not supported by substantial evidence." *Id.* (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir.2006)).

■ We find that the ALJ provided clear and convincing reasons for rejecting Donathan's subjective allegations regarding his impairments, symptoms, and limitations based on his questionable credibility. *See Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir.1996) (where a claimant produces objective evidence of a condition [1] and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so"). The ALJ offered several reasons supporting the adverse credibility determination, including inconsistencies between Donathan's claimed limitations and pain and his daily activities including feeding, playing with, and cleaning the pens of over 20 animals, regular fishing trips, and performing significant home repairs; Donathan's unwillingness to seriously pursue prescribed physical and medical therapies; inconsistencies in Donathan's stated reasons for quitting his job; inconsistencies regarding Donathan's need for use of a cane or scooter, and Dr. Bernstein's finding of no medical necessity supporting the need for such ambulatory assistance; the timing of Donathan's resignation in relation to his vacation to England; an inadequately explained 18–month treatment gap; and Donathan's focus on his disability evidenced by his seeking medical marijuana as treatment for fibro-

---

*** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

1. The ALJ questioned whether the minimal objective evidence corroborated the existence of fibromyalgia—which would have ended the inquiry at step two, 20 C.F.R. § 404.1520—but found that Donathan's fibromyalgia was severe "in order to view the claimant's subjective allegations in a light most favorable to him."

myalgia. While the support for some of the ALJ's other reasons is questionable or ambiguous, substantial evidence supports the ALJ's finding, *i.e.,* there is relevant evidence that a reasonable mind might accept as adequate to support the ALJ's conclusion. *Orn,* 495 F.3d at 630; *see Batson v. Comm'r, Soc. Sec. Admin.,* 359 F.3d 1190, 1197 (9th Cir.2004) (affirming credibility finding where one of several reasons was unsupported by the record).

■ Further, we find that the ALJ provided clear and convincing reasons for rejecting the opinions of treating physicians, Drs. Rice and Hudson. *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir.1995) (ALJ must provide clear and convincing reasons for rejecting treating or examining physician's uncontradicted opinion). The ALJ stated that Drs. Hudson and Rice relied heavily on Donathan's subjective reports of tender points and his fibromyalgia history, all of which is questionable in light of the proper adverse credibility determination. Donathan also presented with normal physical findings (*e.g.,* normal range of motion in neck, hips, etc.) aside from subjectively identified tender points. Additionally, these physicians' opinions as to total disability were inconsistent with the record as a whole. Despite his general impression of fibromyalgia, Dr. Bernstein's control point test findings and normal physical findings further undermine Dr. Rice's and Dr. Hudson's opinions.

■ The ALJ's assessment of Dr. Rice's and Dr. Hudson's opinions was not free of error, but any error was harmless because it was inconsequential to the overall disability determination. *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 885 (9th Cir.2006). As raised by the dissent, the ALJ erred by characterizing Dr. Rice's and Dr. Hudson's opinions as dependent on Dr. Hill's diagnosis of "borderline fibromyalgia." This error was harmless, however, because the ALJ provided proper, independent reasons for rejecting these opinions.

■ The dissent also assigns error to the ALJ for consulting the American College of Rheumatology's ("ACR") objective fibromyalgia diagnostic criteria to evaluate Dr. Rice's and Dr. Hudson's opinions. However, even assuming that the ALJ's reference to the ACR criteria was error, it was harmless because the ALJ properly rejected these medical opinions for reasons unrelated to the ACR standards. While an ALJ may not consult outside medical texts in order to conduct his own evaluation of the claimant's physical condition, *Day v. Weinberger,* 522 F.2d 1154, 1156 (9th Cir.1975), the ALJ referred to the ACR standards as a means of evaluating whether to give the treating physicians' opinions controlling weight under 20 C.F.R. § 404.1527(d)(2)—which requires evaluation of whether the physicians used "medically acceptable" diagnostic techniques. *See also Holohan v. Massanari,* 246 F.3d 1195, 1202 (9th Cir.2001); Soc. Sec. Ruling 96–2p (1996). Our cases do not expressly preclude outside reference for this purpose, and we have previously acknowledged the ACR's standards as agreed-upon objective criteria for diagnosing fibromyalgia. *Benecke v. Barnhart,* 379 F.3d 587, 590 (9th Cir.2004). Nonetheless, assuming that the ALJ committed error, it was harmless.

■ Finally, we find that the ALJ properly concluded that Donathan does not suffer from a severe mental impairment. The ALJ supported this finding with substantial evidence, including the infrequency of reports of mental impairments to treating physicians, the lack of emergency room intervention or psychiatric hospitalization, Dr. Prescott's clinical findings indicating a lack of significant impact of mental impairments on Donathan's

functioning,[2] Dr. Bernstein's report regarding a lack of mental impairment, and evidence of Donathan's significant daily activities that are inconsistent with the claimed severe mental impairment. The ALJ also provided specific and legitimate reasons for rejecting Dr. Kalnins's medical opinion. *Lester*, 81 F.3d at 830 (ALJ must provide specific and legitimate reasons for rejecting an examining physician's contradicted opinion). The ALJ noted Dr. Kalnins did not support her evaluation with objective clinical findings, made inconsistent statements in her report regarding the onset of Donathan's disability, and relied greatly on Donathan's incredible subjective reports. Thus, the ALJ did not err in adjudging Donathan's mental impairment non-severe.

For the foregoing reasons, we affirm the district court's decision upholding the ALJ's denial of Donathan's claim for disability benefits.

AFFIRMED.

GRABER, Circuit Judge, dissenting:

I respectfully dissent.

At step two of the sequential evaluation process, the administrative law judge ("ALJ") found that Claimant's fibromyalgia constitutes a "severe" impairment. At the same time, however, and somewhat inconsistently, at step four the ALJ rejected the opinions of Dr. Rice and Dr. Hudson, two of Claimant's treating physicians, concerning the extent of Claimant's resulting limitations. *See* 20 C.F.R. § 404.1502 (defining "treating" sources); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989) (describing a treating physician as one

"employed to cure" (internal quotation marks omitted)).

To reject a treating physician's opinion, an ALJ must provide "specific and legitimate" reasons, and a treating physician's medical opinion is entitled to deference and some weight even if it is inconsistent with other substantial evidence in the record. *Holohan v. Massanari*, 246 F.3d 1195, 1202–03 (9th Cir.2001) (internal quotation marks omitted). The ALJ provided specific reasons here, but those reasons are not "legitimate" as a matter of law, and the ALJ failed to accord the treating physicians' opinions the weight that our precedent demands.

The ALJ rejected the opinions of Dr. Rice and Dr. Hudson in part because, according to the ALJ, they adopted Dr. Hill's initial preliminary diagnosis without independent corroboration. That reason is not supported by the record. Both Dr. Rice and Dr. Hudson conducted separate, independent examinations before concluding that Claimant suffers from fibromyalgia. Additionally, after diagnosis, and both before and after the alleged onset date, Drs. Rice and Hudson monitored, examined, and treated Claimant without altering their consistent diagnoses. *See* 20 C.F.R. § 404.1527(d)(2)(i)-(ii) (providing that the length of the treatment relationship and the consistency of diagnosis should be weighed). Moreover, Dr. Hudson is a rheumatologist—the only such specialist to have examined and treated Claimant—and "[r]heumatology is the relevant specialty for fibromyalgia." *Benecke v. Barnhart*, 379 F.3d 587, 594 n. 4 (9th Cir.2004). That being so, his specialized

---

**2.** The ALJ adequately explained his reasons for rejecting a portion of Dr. Prescott's opinion—reporting a global assessment of functioning score of 60—by describing and resolving the conflict between the record and the score. *See Magallanes v. Bowen*, 881 F.2d

747, 750, 753 (9th Cir.1989) (ALJ is responsible for resolving conflicts in the evidence and he need not agree with everything an expert witness says to hold that the testimony contains substantial evidence).

knowledge deserved special deference, *id.*, which the ALJ manifestly did not grant.

Having faulted Drs. Rice and Hudson for relying on Dr. Hill's earlier opinion, the ALJ further erred by improperly performing his own medical research, outside the record, and purporting to draw his own medical conclusions to discount Dr. Hill's initial diagnostic opinion. The decision referred repeatedly to the failure of the medical records to contain the "necessary diagnostic verification specified by the American College of Rheumatology," an ironic reference in view of the ALJ's refusal to credit fully the medical opinion of the only rheumatologist who actually examined and treated Claimant. The ALJ went so far as to assert, without a basis in the record itself, that Claimant's medical records were deficient for failure to show "longitudinal diagnostic criteria identified by the American College of Rheumatology such as a chronic low-grade fever of at least 3 months['] duration." Because an ALJ is not a medical expert, the ALJ may not go "outside the record to medical textbooks for the purpose of making his own exploration and assessment as to claimant's physical condition." *Day v. Weinberger,* 522 F.2d 1154, 1156 (9th Cir.1975). The ALJ here erred by doing just what *Day* forbids. That error of law is not harmless because the ALJ relied largely on his own impermissible medical factfinding outside the record to conclude that Dr. Hill's original opinion was unreliable, and then compounded the error by declaring the opinions of Drs. Rice and Hudson to be unreliable because they relied (in part) on Dr. Hill's opinion.

In my view, these errors of law require that we remand the case for reconsideration. The ALJ's obvious suspicion of fibromyalgia as a proper medical diagnosis pervades the decision. Accordingly, I would remand for reconsideration before a different ALJ.