FILED

APR 08 2013

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

RAYMOND M. PARENT,

    Plaintiff - Appellant,

 v.

MICHAEL J. ASTRUE, Commissioner of
Social Security,

    Defendant - Appellee.

No. 11-35843

D.C. No. 9:10-cv-00144-JCL

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Montana
Jeremiah C. Lynch, Magistrate Judge, Presiding

Argued and Submitted November 8, 2012
Portland, Oregon

Before: RIPPLE,[**] TROTT, and PAEZ, Circuit Judges.

    Parent appeals the district court's judgment affirming the Commissioner of

Social Security's final administrative decision denying his second application for

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

[**]    The Honorable Kenneth F. Ripple, Senior Circuit Judge for the United
States Court of Appeals for the Seventh Circuit, sitting by designation.

disability insurance benefits and supplemental security income on the ground that he was not disabled under the Social Security Act. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291, and we affirm.

Parent raises three issues, each of which we address in turn.

**Adverse Credibility Finding**

As part of the Administrative Law Judge's determination at step four that Parent had the residual functional capacity to perform light work, the ALJ was required to assess his alleged pain and symptoms arising from his impairments. As the ALJ explained, he was obliged to "evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning." And, to the extent Parent's statements were not substantiated by objective evidence, the ALJ had to make a "finding on the credibility of the statements based on a consideration of the entire case record."

After so doing, the ALJ concluded that Parent's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of those symptoms are not credible." The ALJ factored Dr. Forney-Gorman's opinion into his discussion and evaluation of this issue.

2

The ALJ's adverse credibility finding regarding Parent's testimony was adequately supported by clear and convincing evidence and reasons. This evidence included the relevant inputs of Dr. Webber, Dr. Newbrough, Dr. Schofield, and Dr. Bach.

The record evidence of malingering is particularly telling with respect to Parent's credibility in connection with his description of the intensity, persistence, and limiting effects of the symptoms caused by his impairments. In 2003, he suffered an accident at work which he claimed materially interfered with his ability to work. Less than two months later he was observed performing construction work at a laundromat. The ALJ assigned to Parent's first application for benefits summarized Parent's activities in his decision of September 7, 2007:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limited effects of these symptoms are not entirely credible.
> The claimant's longitudinal medical history does not support his allegations of disability. As a result of his work-related fall, the claimant was treated and examined by physicians under the direction of the Montana Workmen's Compensation program. On July 10, 2003, the claimant was examined by Dr. Mark Paul, treating source, who noted that the claimant was complaining of severe back pain, numbness and radiation of pain in his

3

right leg. Dr. Paul noted that the claimant was not bearing weight on his right leg, but observed no other functional abnormalities.

On July 23, 2003, Dr. Paul again examined the claimant, who was then complaining of pain in his shoulders and right arm. He was also complaining of frequent headaches and back pain. Dr. Paul diagnosed a cervical, thoracic and lumbar strain secondary to a fall.

Following these visits with Dr. Paul, video surveillance of the claimant was obtained by workmen's compensation. On August 22, 2003, the claimant was observed performing construction work at a laundromat in Corvallis, Montana. Specifically, he was observed bending and locking a trailer hitch, kneeling, carrying laundry components and scrap metal out of the laundromat and squatting to drill on a machine. He also reached into a tool box and lifted out tools, dragged a large object out the door and moved a large metal unit without the aid of a hand truck. On August 24, 2003, he was observed loading a large boom box into his car, and he put long pieces of pipe into a scrap pile. The undersigned notes that these activities are wholly inconsistent with the claimant's allegations . . . .

Dr. Paul again examined the claimant on September 30, 2003, noting that his pain behaviors in the examining room were not consistent with his behavior in the waiting room. Dr. Paul also reviewed the report made from the surveillance video which indicated that the claimant was performing heavy work tasks. Dr. Paul concluded that there were no objective physical findings which justified the claimant's allegations, and he informed the claimant that he would no longer provide any treatment or care at his clinic. Shortly thereafter, the claimant record indicates that the claimant's workmen's compensation claim was closed. . . .

Finally, as a result of this application, the claimant underwent a psychological examination in May 2007. As

noted above, Dr. Patricia Webber noted that the claimant endorsed illogical or highly atypical neurological symptoms, symptoms of memory impairment that were inconsistent with patterns of impairment seen in brain dysfunction or injury, atypical symptoms of depressions and anxiety, and symptoms atypical of psychotic disorders. In short, she opined that his evaluation was reflective of general malingering. In any event, she observed that the claimant's speech, language, hearing and social skills were intact, and he retained the ability to concentrate and complete basic arithmetic.

(internal citations omitted). Dr. Webber also concluded that there was a "high probability" that Parent provided to her information that was "systematically biased to under-represent [his] level of function."

Finally, Parent's description of his severe limitations with respect to the current application for benefits was inconsistent with his daily activities and his behavior and conviction for illegally obtaining prescription narcotics by scavenging through estate sale garbage.

In sum, Parent has a documented history of exaggerating the effects of his medical problems in order to pursue benefits, as recorded by Dr. Webber.

**The Opinion of Parent's Treating Physician**

Parent claims the ALJ erred in rejecting the opinions of his treating physician, Dr. Forney-Gorman. An ALJ may do so if the ALJ provides "specific

5

and legitimate reasons supported by substantial evidence in the record." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998).

Dr. Forney-Gorman's opinion was that Parent "is unable to work due to chronic illness." In a medical questionnaire dated November 2, 2009, she indicated 1) that he would need to lie down 7-10 times a day for pain relief, 2) that he was not capable of working an "8 hr/day, 5 days/week," and that he would probably miss work more than five days in an average month. When asked on the questionnaire to provide the medical bases for these assessments, she wrote "See medical records."

Here, as a beginning, we adopt without alteration the district court's analysis which we find to be correct.

> Family practitioner Dr. Alison Forney-Gorman has been one of Parent's treating physicians at least since August 2006. In November 2009, just a few weeks before the administrative hearing, Dr. Forney-Gorman completed a medical questionnaire on which she indicated that Parent could lift no more than 15 pounds, could stand, walk, and sit for a combined total of only three hours in an eight-hour day, would need to lie down seven to 10 times each day, and would miss more than five days of work each month.
> The ALJ rejected Dr. Forney-Gorman's restrictive assessment. The ALJ explained that, "having compared Dr. Forney-Gorman's treatment notes with her assessment," he did "not find support for the degree of

limitations and frequency of rest breaks and absences identified."

Although Dr. Forney-Gorman has been Parent's treating physician for a number of years, there are relatively few progress notes. For the most part, it appears that Dr. Forney-Gorman saw Parent on a monthly basis during the relevant time period, usually to refill his pain medications. As those progress notes reflect, Parent had several severe impairments for which Dr. Forney-Gorman prescribed pain medication. The ALJ accepted as much, finding that Parent could not return to medium-level work, and would be precluded from performing any more than a limited range of light work.

Dr. Forney-Gorman's progress notes do not, however, contain much in the way of specific clinical findings. And some of her observations are inconsistent with the extreme limitations she later imposed. In October 2009, for example, Dr. Forney-Gorman wrote that [P]arent was in no acute distress, oriented, displayed an appropriate mood and affect, good judgment, and good insight. When she completed the subsequent medical questionnaire, Dr. Forney-Gorman simply referenced her progress notes. She did not point to or identify any clinical findings, or otherwise explain what it was that led her to impose such extreme limitations. Absent any such explanation, the ALJ reasonably rejected Dr. Forney-Gorman's conclusory opinion. See e.g. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (an ALJ may reject a treating physician's opinion if it is "brief, conclusory, and inadequately supported by clinical findings"); Carmickle v. Comm'r of Soc. Sec. Sec. Admin., 533 F.3d 1155, 1165 (9th Cir. 2008) (an ALJ may discount a medical opinion based on contradictions between the opinion and contemporaneous treatment notes).

(record citations and footnote omitted).

Returning to our analysis, Dr. Forney-Gorman's opinion is not consistent with other substantial evidence in the record. Here, it is important to distinguish between Dr. Forney-Gorman's medical findings and diagnosis, on one hand, and her opinion related to Parent's ability to work, on the other. The ALJ did not reject Dr. Forney-Gorman's diagnosis and medical findings, just her conclusory opinion regarding Parent's ability to work. Dr. Forney-Gorman's notes reflect that much of her information regarding the intensity, persistence, and limiting effects of Parent's impairments came from him. Ordinarily, this source would not be suspicious, but given the self-serving problems with Parent's credibility, this circumstance diminishes the force of her opinion. It simply does not follow that Dr. Forney-Gorman's medical findings require a conclusion that Parent was disabled and unable to work.

The constellation of Parent's impairments or combination thereof did not meet or medically equal the criteria that end the inquiry at step three of a claimant's sequential evaluation, a point which Parent's counsel does not contest. Thus, the inquiry proceeded to the next step.

20 C.F.R. § 404.1527 explains how the Social Security Administration evaluates opinion evidence such as Dr. Forney-Gorman's:

(b) How we consider medical opinions.  In determining whether you are disabled, we will always consider the medical opinions in your case record <u>together with the rest of the relevant evidence we receive</u>.

(c) . . . (3) Supportability.  The more a medical source presents relevant evidence to support an opinion, <u>particularly medical signs and laboratory findings</u>, the more weight we will give that opinion.

(emphasis added) (internal citation omitted).

In arriving at his conclusions, the ALJ said he carefully considered "all the evidence."  With respect to his findings, he said he considered "the entire record."  These statements encompass among other things the evidence of Parent's exaggerated effects of his impairments which in turn weighs against Dr. Forney-Gorman's opinion.

We respectfully reject our concurring and dissenting colleague's assertions that we have inappropriately manufactured "ad hoc reasons" for disregarding Dr. Forney-Gorman's opinion, and that we have done for the ALJ what he should have done himself.  To test Dr. Forney-Gorman's opinions on the subject, submitted by Parent on his behalf, the ALJ simply followed the doctor's lead.  When she was asked to provide "the medical bases" for her opinions, she directed everyone to her "medical records."  Thus, the ALJ did what the doctor suggested, and he found insufficient support -- as detailed by the district court -- for her unsubstantiated

9

conclusions, as do we. We can hardly fault the ALJ for following the doctor's instructions to see if he could find what she suggested he would. He did not. Neither do we.

## Hypothetical Questions

Parent's final issue is that the ALJ inappropriately ignored the vocational expert's testimony as to the third hypothetical presented to him, a hypothetical which included his limitations as described by Parent himself and by Dr. Forney-Gorman. Because this claim is essentially a restatement of Parent's unpersuasive arguments regarding (1) his credibility, and (2) Dr. Forney-Gorman's rejected opinion, this claim also has no merit.

## Conclusion

The ALJ concluded that "the evidence of record does not support finding the claimant has restrictions greater than those identified in [his] residual functional capacity." The record supports this decision.

AFFIRMED.

*Parent v. Astrue*, No. 11-35843

PAEZ, Circuit Judge, concurring in part and dissenting in part.

I concur in the majority's conclusion that the ALJ's decision to discredit

Parent's testimony is supported by substantial evidence. I disagree, however, with

the majority's determination that the ALJ did not err in rejecting Dr. Forney-

Gorman's opinion.

A treating physician's opinion is entitled to special weight because a treating

physician "is employed to cure and has a greater opportunity to know and observe

the patient as an individual." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir.

1995) (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). Thus, to

reject a treating physician's opinion, an ALJ must "'make[] findings setting forth

specific, legitimate reasons for doing so that are based on substantial evidence in

the record.'" *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (2009)

(quoting *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)). An ALJ can

only meet this burden "by setting out a detailed and thorough summary of the facts

and conflicting clinical evidence, stating [his] interpretation thereof, and making

findings." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (quoting

*Magallanes*, 881 F.2d at 751).

Although the district court and majority provide their own reasons for

Page 1 of 6

setting aside Parent's treating physician's opinion, the ALJ did not. I am also not persuaded by the majority's attempt to distinguish between rejecting a treating physician's "medical findings and diagnosis" and rejecting a treating physician's opinion with respect to a patient's inability to work. Mem. at 9. Such a distinction is unfounded in reason and this court's case law. A physician's opinion with respect to a patient's inability to work is, of course, a medical finding. Indeed, it is ordinarily the relevant medical finding for purposes of disability claims. *See Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) (holding that the ALJ's rejection of the treating physicians' "opinions of total disability" was not supported by substantial evidence). Because the ALJ failed to meet his burden, I would reverse and remand.

The sole explanation the ALJ gave for disregarding the opinion of Dr. Forney-Gorman, Parent's treating physician, was cursory at best: "[H]aving compared Dr. Forney-Gorman's treatment notes with her [assessment in the disability medical questionnaire], the undersigned does not find support for the degree of limitations and frequency of rest breaks and absences identified." We have rejected such vague and conclusory explanations as insufficient to meet the "specific, legitimate reasons" standard. In *Embrey*, we confronted a similarly vague finding by the ALJ: "The opinions of total disability tended [sic] in the

record are unsupported by sufficient objective findings and contrary to the preponderant conclusions mandated by those objective findings." 849 F.2d at 421. We explained:

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors' are correct.

*Id.* at 421-22; *see also Vasquez v. Astrue*, 572 F.3d 586, 592 (9th Cir. 2009).

The ALJ's decision in this case suffers from the same fatal flaw of lack of specificity. It was not enough for the ALJ merely to say that Dr. Forney-Gorman's opinion is not supported by her progress notes without more. He must set forth his interpretations of the doctor's notes and explain why they are insufficient to support her medical conclusions regarding Parent's inability to work. This is critical here because, in the twenty pages or so of treatment notes that are in the record, nothing glaringly conflicts with Dr. Forney-Gorman's opinions. In fact, many of the notes reflect chronic pain and sleep deprivation that "significantly limit[ Parent] during the day."

The "ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by

clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). But the ALJ must state that the medical opinion's brevity or lack of support is the reason for his decision and explain his reasoning with specificity. Such specific reasoning is entirely lacking in the ALJ's decision here. Instead, the ALJ's decision leaves this court with the unacceptable task of speculating about what *may* have motivated his decision to disregard the treating physician's medical opinion. The "specific, legitimate reasons" standard was adopted precisely because an appellate court cannot engage in such speculation when determining whether an ALJ's decision is supported by substantial evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc) ("As we have previously recognized, a reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain."); *see also Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 884 n.2 (9th Cir. 2006) ("Indeed, with no reference to the record in this part of the decision, we are left to guess what testimony the ALJ was considering and why he thought it undermined Robbins's credibility. . . . Our review of the record on this issue . . . is beside the point. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (emphasizing the 'fundamental rule of administrative law' that 'a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge

the propriety of such action solely by the grounds invoked by the agency');

*Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ('We are constrained to review the reasons the ALJ asserts.').").

Despite the foregoing, the district court's ruling and the majority's judgment affirm the ALJ's decision by providing an independent analysis of Dr. Forney-Gorman's treatment notes. Thus, the district court and majority, relying on the district court's analysis, provide their own "specific, legitimate reasons" for disregarding Dr. Forney-Gorman's medical opinion. The district court notes that there were "relatively few progress notes" based on the number of years Dr. Forney-Gorman provided treatment; that they did not contain "much in the way of specific clinical findings"; and that some were inconsistent with extreme limitations, such as an October 2009 note that Parent was "in no acute distress, oriented, displayed an appropriate mood and affect, good judgment, and good insight." The district court also noted that Dr. Forney-Gorman failed to bolster her opinion with specific clinical findings.

If the ALJ had provided any of these reasons in his decision, his determination to disregard the doctor's opinion might very well pass muster under the specific and legitimate reasons test. It is nonetheless worth noting that in the same October 2009 note the district court references, Dr. Forney-Gorman indicated

that Parent was experiencing worsening shortness of breath and dry cough; flaring COPD symptoms and hip pain; pain uncontrolled by his prescription for Lortab; limited range of motion secondary to pain; and diminished strength secondary to pain. These notes support a finding of significant disability. These differing interpretations of that single note demonstrate why it was conjecture for the district court to opine as to why the ALJ found that the notes did not support Dr. Forney-Gorman's medical conclusions.

We cannot—nor may the district court—provide ad hoc reasons for disregarding a treating physician's opinion where the ALJ provides none. Nor can an ALJ meet his burden of providing specific, legitimate reasons for rejecting a treating physician's opinion by simply referring "everyone" to the doctor's treatment notes without any reasoning. Mem. at 10. I would reverse and remand to the Commissioner because the ALJ, in developing his residual functional capacity determination provided no specific reasons of his own for disregarding Dr. Forney-Gorman's opinion. Because I would reverse and remand on this issue, I would also remand the related issue of whether the hypothetical questions posed to the vocational expert were legally correct.